Kym PARDINI, on behalf of herself and other others similarly situated, Plaintiff,

v.

UNILEVER UNITED STATES, INC., Defendant.

Case No. 13–1675 SC.

United States District Court, N.D. California.

July 9, 2013.

Shana E. Scarlett, Hagens Berman Sobol Shapiro LLP, Berkeley, CA, Steve W. Berman, Hagens Berman Sobol Shapiro LLP, Seattle, WA, Ureka Ellie Idstrom, The Eureka Law Firm, Kansas City, MO, pro hac vice, for Plaintiff.

William Lewis Stern, Claudia Maria Vetesi, Lisa Ann Wongchenko, Morrison & Foerster LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING MOTION TO DISMISS

SAMUEL CONTI, District Judge.

### I. *INTRODUCTION*

Plaintiff Kym Pardini ("Plaintiff") brings this putative class action in connection with Defendant Unilever United States, Inc.'s ("Defendant") marketing of I Can't Believe It's Not Butter! Spray. Plaintiff alleges that the product is deceptively marketed as having "0 fat" and "0 calories," since it in fact contains 771 calories and 82 grams of fat per bottle. ECF No. 1 ("Compl.") ¶¶ 4–5. Defendant now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 13 ("Mot."). The Motion is fully briefed, ECF Nos. 15 ("Opp'n"), 17 ("Reply"), and appropriate for determination without oral argument per Civil Local Rule 7–1(b). For the reasons described below, the Motion is GRANTED.

### II. *BACKGROUND*

■ As it must on a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded allegations as true. I Can't Believe It's Not Butter! is the second largest margarine brand in the United States. Compl. ¶ 15. The product at issue in this case, I Can't Believe It's Not Butter! Spray ("ICBINBS") is marketed as a "0 Calorie" and "0 Fat" alternative to butter. *Id.* ¶ 16. The Court takes judicial notice of the fact that the product is dispensed via manual pump, with each pump delivering a squirt of oil. *See* Compl. Figure 2 ("Front Label").

The front label of the ICBINBS packaging prominently states that the product is "Great for Topping & Cooking" and contains "0 Calories per serving" and "0 g Trans Fat* per serving." *Id.* The asterisk refers to an explanatory phrase printed in smaller type immediately below: "Contains 0 g fat (0 g saturated fat), and 0 g trans fat per serving, see nutrition infor-

mation for serving size."[1] *Id.*

The back of the packaging displays the "nutrition panel," which states "Calories 0" and "Calories from Fat 0." Compl. Figure 1 ("Back Label"). The nutrition panel states that the serving size is "1 Spray (0.20g) Cooking Spray" or "5 Sprays (1g) per Topping." *Id.* The nutrition panel also discloses the fat, cholesterol, and sodium per serving and the product's ingredients. *Id.* The first three listed ingredients are water, liquid soybean oil, and sweet cream buttermilk. *Id.*

Plaintiff claims that Defendant's "0 Fat" and "0 Calorie" representations are false and misleading because the listed serving sizes fail to account for the manner in which ICBINBS is customarily used. Compl. ¶ 6. Essentially, Plaintiff alleges that Defendant has set an artificially small serving size so that the calories and fat per serving can be rounded down to zero. Plaintiff alleges that each bottle of ICBINBS actually contains 771 calories and 82 grams of fat, *id.* ¶ 4, meaning that each 340–gram container is about 24 percent fat by weight, each recommended serving of cooking spray (one spray) contains about 0.45 calories and 0.048 grams of fat, and each recommended serving of topping (five sprays) contains about 2.27 calories and 0.24 grams of fat.[2] Plaintiff also alleges that the label does not disclose that ICBINBS contains ingredients that are fats and which, even in small quantities, add certain amounts of fat and calories per serving. *Id.* ¶¶ 5–7. Plaintiff alleges that the soybean oil and buttermilk ingredients

listed in the nutrition panel should have been followed by an asterisk and language disclosing the presence of fat. *Id.* ¶ 31.

Plaintiff asserts that Defendant violated the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and its implementing regulations by (1) failing to adequately disclose the level of fat and calories per serving in accordance with 21 U.S.C. § 343(q), and 21 C.F.R. § 101.9(b)(1); and (2) making "fat free" and "zero calorie" nutrient content claims in violation of 21 U.S.C. § 343(r), 21 C.F.R. §§ 101.13(b), 101.62(a)(3), and 101.60 (a)(3).

Plaintiff seeks to certify a nationwide class of all persons who purchased ICBINBS and a subclass of all persons in the state of California who purchased the product. *Id.* ¶ 48–49. The Complaint asserts causes of action for (1) unjust enrichment/common law claim for restitution; (2) fraud by concealment; (3) breach of express warranty; (4) intentional misrepresentation; (5) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750 *et seq.*; (6) violation of the California Unfair Competition ("UCL"), Cal. Bus & Prof.Code § 17200 *et seq.*; and (7) violation of the consumer protection acts of the various states. Plaintiff prays for compensatory and punitive damages, restitution, interest, attorneys' fees, costs, and injunctive relief.

Defendant now moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil 12(b)(6).

---

1. Certain aspects of the label attached to the Complaint are practically illegible (including the explanatory phrase "Contains 0 g fat ..." and the net weight of the container), though the parties do not dispute the label's contents. The Court advises Plaintiff to file legible images of product labels going forward.

2. The Court arrived at the fat and calories per serving by dividing the total amount of fat and calories per container by the number of servings per container (1700 cooking spray and 340 topping). *See* Back Label. The Court assumes that each container holds 340 grams of ICBINBS since, according to the nutrition panel, each spray weighs 0.20 grams and there are 1700 sprays per container.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

 Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.2011) (quotation marks and citations omitted).

## IV. DISCUSSION

Defendant moves to dismiss on the grounds that Plaintiff's claims are preempted or, alternatively, that Plaintiff has failed to state a claim due to various pleading defects. The Court addresses Defendant's preemption argument first and then turns to its arguments concerning specific pleading defects.

### A. Preemption

The FDCA, as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), sets forth a comprehensive set of food labeling requirements. *See* 21 U.S.C. § 343. The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered "misbranded." Sections 343(q) and 343(r) regulate the information that must be included in all packed products' nutrition panel as well as all other nutrient content claims that appear elsewhere on the label. The FDCA contains a broad preemption provision which prohibits states or other political subdivisions from directly or indirectly establishing any requirement for nutrition labeling that is not identical to the requirements set forth in § 343(q) or § 343(r). *Id.* § 343–1(a)(4)–(5).

Here, Defendant argues that all of Plaintiff's claims are preempted because they impose requirements that are not identical to the FDCA and regulations promulgated by the U.S. Food and Drug Administration ("FDA") pursuant to the FDCA. Specifically, Defendant argues that the FDCA preempts Plaintiff's claims that: (1) Defendant used artificially small serving sizes to understate the amount of calories and fat contained in ICBINBS; (2) Defendant made unlawful "0 Fat" and "0 Calories" nutrient content claims; and (3) Defendant omitted the asterisk and explanatory notation required when making "0 fat" claims on the front label. Alternatively, Defendant argues that Plaintiff's claims are preempted because the FDCA

does not provide for a private right of action.

### 1. *Plaintiff's "Serving Size" Claim*

Where a single serving of a particular product contains less than 0.5 grams of fat, FDA regulations provide that the product's label shall express the fat content per serving as zero. 21 C.F.R. § 101.9(c)(2). Likewise, calories per serving may be expressed as zero where a product contains less than five calories per serving. *Id.* § 101.9(c)(1). The crux of Plaintiff's serving size claim is that Defendant used unlawful serving sizes so that it could round down to zero ICBINBS's fat and calories per serving. The FDCA provides that a food label must list "the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food." 21 U.S.C. § 343(q)(1)(A)(i). Plaintiff alleges that the suggested serving sizes for ICBINBS—one spray (or 0.20 grams) for "Cooking Spray," and five sprays (or 1.0 grams) for "Topping"—are smaller than the amount customarily consumed. Compl. ¶¶ 25–26.

Defendant contends that Plaintiff's serving size claim is preempted since ICBINBS's serving sizes are consistent with FDA regulations. Mot. at 4–5. Specifically, Defendant points to 21 C.F.R. § 101.12, which sets forth the reference amounts customarily consumed per eating occasion (the "Reference Amount") for various categories of food products. *Id.* According to that regulation, the Reference Amount for "Fats and Oils: Spray types" is 0.25 grams. 21 C.F.R. 101.12(b) (Table 2). Defendant argues that "[b]ecause [ICBINBS] is labeled as a spray and functions as a spray, it is a spray, and therefore must be categorized in this group." Mot. at 5. Defendant contends that the "Cooking Spray" and "Topping" serving sizes listed in ICBINBS's nutrition facts comply with the 0.25–gram Reference Amount for "Fats and Oils: Spray types." *Id.* Defendant argues that at 1.0 grams, the five spray "Topping" serving size is four times the required amount. Mot. at 5. At one spray (0.20 grams), the "Cooking Spray" serving size is slightly smaller than the 0.25–gram Reference Amount. However, Defendant argues that the listed serving size is a proper translation of the Reference Amount pursuant to the regulation, *id.,* which provides that "[m]anufacturers are required to covert the [Reference Amount] to the label serving size in a household measure most appropriate to their specific product," 21 C.F.R. § 101.12(b) n.3.

■ Plaintiff responds that, to the extent that ICBINBS could be considered a "spray," the label expressly violates FDA regulations by using a serving size of one spray (0.20 grams), which is lower than the 0.25–gram Reference Amount for "Fats and Oils: Spray types." The Court disagrees. First, it would not make any sense for Defendant to list a serving size of 1.25 sprays (0.25 grams), since a consumer could not dispense a quarter of a spray. Second, and more importantly, the fat and calorie content of a 0.25–gram serving of ICBINBS must still be rounded down to zero. So long as the basic laws of physics apply, there is no possible way that 0.25 grams of any substance could have more than 0.5 grams of fat. *See* 21 C.F.R. § 101.9(c)(2) (less than 0.5 grams of fat must be rounded down to zero). Further, assuming that each 340–gram container of ICBINBS contains 771 calories, then a 0.25–gram serving would contain 0.57 calories—far less than five calories. *See* 21 C.F.R. § 101.9(c)(1) (less than five calories may be rounded down to zero).

Next, Plaintiff argues that ICBINBS belongs in FDA's "butter, margarine, oil, and shortening" category, not the "spray type"

category. Opp'n at 7. FDA regulations provide that the Reference Amount for the "butter, margarine, oil, and shortening" category is one tablespoon, 21 C.F.R. § 101.12(b) (Table 2), and FDA inspection guidelines describe products falling into this category as "[a]ll types of butter and margarine (regular, diet, liquid, and whipped); spreads; oils, and shortenings." ECF No. 16 ("Berman Decl.") Ex. 2 ("FDA Inspection Guidelines") at 6. Plaintiff argues that Defendant's attempt to classify ICBINBS as a spray type conflicts with § 101.12(b), which purportedly "declares that 'spray type' servings are measured by the second." Opp'n at 6. Plaintiff contends that the "spray types" category was intended to encompass only aerosol, non-stick cooking sprays such as PAM, which is sold in pressurized metal canisters in the accessories area of grocery stores, and which emits a continuous, fine mist that dispenses trivial amounts of product that lubricates cookware. *Id.* Plaintiff argues that ICBINBS is nothing like PAM since: (1) ICBINBS's quantity cannot be measured by the second since it is dispensed via manual pump; (2) ICBINBS is sold in plastic bottles alongside butter and margarine; (3) ICBINBS is not used as a "nonstick cooking spray"; and (4) ICBINBS is used as a "topping," while PAM is not. *Id.* at 6–7. Plaintiff also argues that the FDA has defined "spray types" as "nonstick cooking sprays (e.g., Pam)." *Id.* at 7 (citing FDA Inspection Guidelines at 6).

Plaintiff's arguments are unpersuasive. First, 21 C.F.R. § 101.12(b) does not declare that spray types must be susceptible to measurement by the second. Rather, the regulation states that the use of particular metrics, such as "seconds [of] spray," are not required.[3] 21 C.F.R. § 101.12(b) n.5. Second, the composition of ICBINBS's packaging and its location in the grocery store are not determinative. Third, Plaintiff's contention that ICBINBS is not a non-stick cooking spray is conclusory and belied by the facts alleged in the complaint. The front label of the product represents that ICBINBS is "Great For ... Cooking," and the back label lists a serving size for "Cooking Spray." Plaintiff's contention is also contradicted by the ICBINBS webpage she attaches to her opposition brief, which states that ICBINBS may be used to "coat[ ] pans for non-stick cooking and baking." Opp'n at 8. Fourth, the fact that ICBINBS can be used as a topping does not mean that it is not a cooking spray. As Defendant points out, the two categories are not mutually exclusive. Fifth, to the extent that the FDA Inspection Guidelines are binding, they do not provide an exclusive list of "spray type" products.

Another problem with Plaintiff's position is that she has yet to allege the appropriate serving size for ICBINBS. In her opposition brief, she suggests that ICBINBS's serving size should be equivalent to one tablespoon, the Reference Amount for "butter, margarine, oil, and shortening." However, it is unclear how many sprays of ICBINBS would fill one tablespoon.[4] This issue goes directly to the

---

**3.** Section 101.12(b) contemplates that serving size units are not amenable to a one-size-fits-all approach, stating: "Manufacturers should use the description of a unit that is most appropriate for the specific product (e.g., sandwich for sandwiches, cookie for cookies, and bar for frozen novelties)." 21 C.F.R. 101.12(b) n.5. Since ICBINBS is dispensed via manual pump, expressing the product's

serving size as a number of sprays is not inconsistent with the regulation. Indeed, it is unclear how else Defendant would express the product's serving size in a manner that a reasonable consumer could measure.

**4.** The Court cannot derive this figure from ICBINBS's label, since it expresses quantities as a function of weight, while a tablespoon is

plausibility of Plaintiff's serving size claim. For example, if one spray fills one tablespoon, then ICBINBS's serving size is lawful, regardless of whether the product is a "spray type" or a "butter, margarine, oil, [or] shortening." Alternatively, if the Court was to assume that it takes forty sprays to fill a tablespoon, then Plaintiff's claim rests on the implausible assumption that consumers customarily pump a container of ICBINBS forty times per serving.

■ For these reasons, the Court finds that Plaintiff's serving size claim is preempted by 21 C.F.R. § 101.12(b). The claim is DISMISSED WITH LEAVE TO AMEND. Should Plaintiff choose to amend, she should allege specific facts showing why ICBINBS is not a spray. The amended complaint should also identify the appropriate serving size for ICBINBS, as well as the fat and caloric content associated with that serving size.

### 2. Plaintiff's "Nutrient Content" Claim

■ Plaintiff also alleges that Defendant "made unlawful '0 Fat' and '0 Calories' nutrient content claims" on the nutrition panel and the front label. Compl. ¶¶ 27–32. Plaintiff's claim that Defendant misrepresented ICBINBS's fat and calorie content on the nutrition panel is largely dependent on her contention that Defendant used unlawful serving sizes. Plaintiff does not dispute that food manufacturers are entitled to round down to zero where a product's fat per serving is less than 0.5 grams and calories per serving is less than

5. See 21 C.F.R. § 101.9(c)(1)–(2). Nor does Plaintiff dispute that ICBINBS has less than 0.5 grams of fat and five calories at the listed serving sizes. Accordingly, if Defendant used the appropriate serving sizes, it was clearly entitled to round down to zero ICBINBS's fat and calories per serving on the nutrition panel. See id. Further, if Defendant was entitled to use these rounded figures on the nutrition panel, it was also entitled to use them on the front label. See Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111, 1120–21 (N.D.Cal.2010). Because Plaintiff's serving size claims are preempted, see Section IV.A.1 supra, Plaintiff's nutrient content claims are also preempted. These claims are DISMISSED WITH LEAVE TO AMEND.[5]

### 3. Plaintiff's "Asterisk" Claim

■ leaves Plaintiff's allegation that, because the front label represents that ICBINBS has "0 Fat," Defendant was required (but failed) to include an asterisk on the nutrition panel next to the ingredients "soybean oil" and "buttermilk," as well as language below the ingredients list indicating that these particular ingredients contain fat. Compl. ¶¶ 29–31. In fact, the term "0 Fat" appears nowhere on the front label. Plaintiff appears to be referring to the front label's statement: " *Contains 0 g fat (0 g saturated fat), and 0 g trans fat per serving, see nutrition information for serving size." This statement appears in small type below a statement in large type: "0 g Trans Fat* Per Serving," with the asterisk next to "Trans Fat" directing the

---

measure of volume. In its reply brief, Defendant argues that it would take forty sprays of ICBINBS to fill one tablespoon. Reply at 3–4. It is not clear how Defendant arrived at this number or why the Court should take judicial notice of it.

5. Defendant also argues that Plaintiff's serving size and nutrient content claims are barred by the primary jurisdiction doctrine since they raise technical questions about the categorization of food types which are best left to the FDA. Mot. at 10–12. The Court need not reach the issue since these claims are preempted as pled.

reader to the statement in smaller type. *See id.*

Whether or not this claim is preempted turns on 21 C.F.R. § 101.62(b), which governs "fat content claims." Section 101.62(b) provides that the terms "no fat" or "zero fat" may be used "on the label or in labeling of foods," provided that:

>(i) The food contains less than 0.5 gram (g) of fat per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of fat per labeled serving; and
>
>(ii) The food contains no added ingredient that is a fat or is generally understood by consumers to contain fat unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of fat," "adds a negligible amount of fat," or "adds a dietarily insignificant amount of fat;"
>
>. . . .

21 C.F.R. § 101.62(b)(1)(i)–(ii). In other words, a product that contains less than 0.5 grams of fat per serving may be labeled as "zero fat" so long as (1) the product contains no ingredient that is a fat or contains fat, or (2) the nutrition panel denotes the ingredients that are fat or contain fat with an asterisk and an explanatory statement. Plaintiff essentially alleges that because the ICBINBS packaging makes a "zero fat" nutrient content claim, the nutrition label must include an asterisk next to "soybean oil" and "buttermilk" and a notation indicating that these ingredients contain some amount of fat.

■ Defendant argues that no asterisks or explanatory statements are required on the nutrition panel because the statement in small type on the front label—* "Contains 0 g fat ..."—is not an independent nutrient content claim subject to

§ 101.62(b)(1). Mot. at 7–9. Defendant reasons that the "Contains 0 g fat" statement functions solely as a voluntary disclosure that explains the basis for the "0 g trans fat" claim. This argument is inconsistent with the FDCA and its implementing regulations. The regulations define a nutrient content claim as "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). Under 21 U.S.C. § 343(r)(1) and 21 C.F.R. § 101.13(c), information that appears as part of the nutrition panel is not a nutrient content claim. However, "[i]f such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(c). Neither the statute nor the regulations carve out an exception for voluntary disclosures or explanatory statements, even if they appear in small type. Since the "0 g fat" representation is on the front label, not the nutrition panel, and makes a direct statement about the level of fat in IC-BINBS, it must be considered a nutrient content claim.

Defendant also argues that since FDA regulations allow the "0 g trans fat" statement, Plaintiff cannot argue that an explanatory statement clarifying the lawful term is preempted. Mot. at 7–8. Defendant relies on *Hairston v. South Beach Beverage Co.*, No. CV 12–1429–JFW (DTBx), 2012 WL 1893818 (C.D.Cal. May 18, 2012), a case involving flavored beverages labeled as "all natural." The plaintiff alleged that the "all natural" label was false and misleading because the beverages contained ingredients that were synthetic or created via chemical processes. *Hairston*, 2012 WL 1893818, at *1. The plaintiff also alleged that the use of common vitamin names (e.g., $B_{12}$) was mis-

leading because the vitamins added to the beverage were synthetic. *Id.* The court concluded that the plaintiff's claims regarding the use of the common names of vitamins were preempted (in fact, the plaintiff essentially conceded the point in its briefing). *Id.* at *3. The Court also concluded that the plaintiff could not avoid preemption of his vitamin label claims by arguing that these claims related solely to the defendants' "all natural" representations. *Id.* Based on *Hairston,* Defendant argues that "Plaintiff cannot avoid preemption by arguing her claim is based solely on the asterisked clarification with no mention of the trans fat claim it describes." Mot. at 8. Defendant is struggling to fit a square peg into a round hole. The cited language from *Hairston* stands for the limited and unremarkable proposition that a plaintiff cannot avoid preemption of one claim by asserting that it supports another claim. There is no indication that Plaintiff is trying to do so here. The pertinent inquiry is whether Plaintiff's asterisk claim, standing on its own, is preempted. The Court concludes that it is not.

■ Finally, Defendant argues that § 101.62(b) only requires an asterisk and explanatory notation where a label claims the entire product is fat free. Mot. at 8. Defendant points out that the label at issue here does not represent that ICBINBS is "fat free" or "zero fat," it merely represents that ICBINBS has "0 trans fat *per serving*" and "0 fat *per serving.*" *Id.* Defendant contends that § 101.62(b) is inapplicable because the label uses the term

"per serving." *Id.* Defendant's cramped reading of the regulation is unavailing. The regulation nowhere states that it only applies where a label claims that there is zero fat in the entire product. Nor is the Court aware of any authority that has interpreted § 101.62(b) in this way. Moreover, § 101.62(b)(1)(i) expressly states that a food qualifies as "fat free" where it contains less than 0.5 grams of fat "per reference amount customarily consumed and per labeled serving," suggesting that the regulation's requirements extend to nutrient content claims that are expressed per serving. Since an entire product need not have less than 0.5 grams of fat to qualify as "fat free" under § 101.62(b), it is unclear why the regulation's disclosure requirement would only apply where a manufacturer claimed the entire product was "fat free." Further, the clear intent of the regulation is to provide consumers with a warning that a product contains some amount of fat, even though it is labeled as "fat free." Defendant's interpretation would essentially eviscerate that requirement.

■ For these reasons, the Court finds that Plaintiff's asterisk claim is not preempted.[6]

### 4. *Private Right of Action to Enforce FDA Regulations*

■ Defendant argues that Plaintiff's claims should also be dismissed because they are based on alleged violations of the FDCA and because there is no private right of action under the statute. Howev-

---

**6.** Defendant argues that Plaintiff's UCL and CLRA claims are barred by the "safe harbor" doctrine, which provides that a defendant is not liable for conduct that is permitted by another law. Mot. at 12 (citing *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 994 (9th Cir.2000)). The Court finds that Plaintiff's UCL and CLRA claims are not barred by

the safe harbor doctrine to the extent that they are predicated on Defendant's failure to include an asterisk in the ingredients list and a notation that certain ingredients add some amount of fat, since such labeling practices are not expressly permitted by FDA regulations.

er, as Defendant's own authority shows, there is a distinction between (1) state law claims that merely recite FDCA violations, and (2) state law claims alleging that noncompliance with the FDCA regulations deceived and harmed consumers, i.e., claims that would exist in the absence of the FDCA. *See Loreto v. Procter & Gamble Co.*, No. 10–4274, 2013 WL 645952, at *2–3 (6th Cir. Feb. 22, 2013). Plaintiff's claims fall into the latter category and are therefore not preempted under this particular theory. Plaintiff essentially alleges that Defendant's labeling not only violates the FDCA but also misleads reasonable consumers into thinking that ICBINBS has absolutely no fat or calories. Absent an FDCA violation, these allegations could potentially support a claim for violation of the CLRA or UCL. Accordingly, the Court finds that Plaintiff's claims are not preempted merely because the FDCA does not provide a private right of action.

## B. *Pleading Defects*

Defendant argues that, even if Plaintiff's claims are not preempted, they must be dismissed because of various claim-specific pleading defects. Specifically, Defendant contends that: (1) Plaintiff has failed to plead her fraud-based claims with the requisite particularity, (2) unjust enrichment is not a cause of action, (3) Plaintiff cannot state a claim for breach of express warranty, and (4) Plaintiff cannot assert violations of other states' consumer protection statutes. Since the Court has found that Plaintiff's serving size and nutrient content claims are preempted, *see* Section IV.A

*supra*, only Plaintiff's asterisk claim can support Plaintiff's causes of action.

### 1. *Fraud*

Defendant argues that Plaintiff has failed to plead her fraud claims with sufficient particularity. Defendant does not specify, but the Court presumes that it is targeting Plaintiff's claims for fraud by concealment and intentional misrepresentation, as well as her claims for violations of the UCL and CLRA. *See Kearns*, 567 F.3d at 1125 (UCL and CLRA claims grounded in fraud must satisfy the particularity requirements of Rule 9(b)). Among other things, Defendant argues that Plaintiff has failed to plead which statements she saw and relied upon and that she never explains how the absence of an asterisk next to the oil ingredients misled her.[7] Mot. at 13–14. Defendant reasons that the asterisk and explanatory note Plaintiff demands would downplay the fat content since the note would state that any fat content is "trivial" or "insignificant." *Id.* at 14 (citing 21 C.F.R. § 101.62).

Plaintiff responds that the Complaint meets the particularity requirements of Rule 9(b) by pleading the falsity of the representations, by listing the ways in which ICBINBS's label violated FDA regulations, and by explaining that Plaintiff sought a fat- and calorie-free alternative to butter and that she would not have purchased ICBINBS but for the false "0 Fat" and "0 Calorie" representations. Opp'n at 14. As to the asterisk claim in particular, Plaintiff argues that "[t]he fact that [Defendant] believes the asterisk would confuse consumers is immaterial: The FDA requires it, plain and simple." *Id.* at 15.

---

**7.** Defendant also argues that Plaintiff fails to allege facts establishing Defendant's knowledge of falsity or intent to defraud. Mot. at 14. However, under Rule 9(b), "[m]alice intent, knowledge, and other conditions of a person's mind may be alleged generally." None of the authority cited by Defendant

holds otherwise. *See Herskowitz v. Apple Inc.*, 12–CV–02131–LHK, 2013 WL 1615867, at *13 (N.D.Cal. Apr. 15, 2013); *PAI Corp. v. Integrated Sci. Solutions, Inc.*, No. C–06–00767 EDL, 2006 WL 1390564, at 6–7, 2006 U.S. Dist. LEXIS 34828, at *20 (N.D.Cal. May 22, 2006).

As discussed in Section IV.A.4 *supra*, Plaintiff cannot state a claim merely by pleading a violation of the FDCA and its implementing regulations. The FDCA does not provide for a private right of action and, in any event, a violation of the FDCA does not amount to fraud. The Court does not mean to imply that there is no way that Plaintiff could have been deceived by the alleged FDCA violation, i.e., the lack of an asterisk and explanatory note on the nutrition panel. It is not inconceivable that a customer would examine the nutrition panel of a product and would decline to purchase that product if it contained even a "trivial" or "insignificant" amount of fat per serving. Indeed, Plaintiff expressly alleges that she was looking for a "0 Fat" option. However, as Defendant points out, Plaintiff has not pled that she ever looked at the nutrition panel. As such, it is implausible that she was deceived by its lack of disclosures.[8]

Since Plaintiff has failed to plead reliance, the Court DISMISSES her claims for fraud by concealment, intentional misrepresentation, violation of the UCL, and violation of the CLRA as they relate to her asterisk claim. The Court grants Plaintiff leave to amend so that she may allege what she saw and when she saw it.

### 2. *Unjust Enrichment*

Defendant argues that unjust enrichment is a theory of recovery, not a cause of action under California law. Mot. at 15. Courts in this district are split on the issue. A number of courts have found that a plaintiff cannot assert a claim for unjust enrichment that is merely duplicative of statutory or tort claims. *See Brazil*

*v. Dole Food Co., Inc.*, 12–CV–01831–LHK, 2013 WL 1209955, at *18 (N.D.Cal. Mar. 25, 2013); *Lanovaz v. Twinings N. Am., Inc.*, C–12–02646–RMW, 2013 WL 675929, at *7 (N.D.Cal. Feb. 25, 2013); *Smith v. Ebay Corp.*, No. C 10–03825 JSW, 2012 WL 27718, at 9–10, 2012 U.S. Dist. LEXIS 1211, at *27–29 (N.D.Cal. Jan. 5, 2012). Other courts have declined to dismiss unjust enrichment claims based on "quasi-contract." *Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB, 2012 WL 6569393, at *13 (N.D.Cal. Dec. 17, 2012); *Larsen v. Trader Joe's Co.*, C 11–05188 SI, 2012 WL 5458396, at *7 (N.D.Cal. June 14, 2012); *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10–4387 PJH, 2011 WL 2111796, at *11 (N.D.Cal. May 26, 2011). The Court finds the former line of cases more persuasive here, especially since all of Plaintiff's other claims fail as pled. Without any actionable misconduct, Plaintiff cannot recover. Plaintiff may seek restitution if she can state a claim under the UCL or CLRA. However, she may not assert a standalone claim for unjust enrichment. Accordingly, the claim is DISMISSED WITH PREJUDICE.

### 3. *Breach of Express Warranty*

Plaintiff's claim for breach of express warranty is predicated on the allegation that Defendant expressly warranted that ICBINBS is "0 Fat" and "0 Calories." Compl. ¶ 73. As discussed in Sections IV.A.1 and IV.A.2 *supra*, Plaintiff's serving size and nutrient content claims are preempted by the FDCA and its implementing regulations. As such, these

---

8. In *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir.2008), the Ninth Circuit held that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." Plaintiff's asterisk claim is distinct from the claim at issue in *Williams* since the governing FDA regulation here, 21 C.F.R. § 101.62(b), expressly allows food manufacturers to clarify representations on the front label through the use of fine print disclosures on the nutrition panel.

claims cannot support a cause of action for breach of express warranty. Plaintiff's asterisk claim is not preempted. However, since it is not predicated on any kind of affirmative representation, it cannot support a claim for breach of express warranty either. Accordingly, Plaintiff's claim for breach of express warranty is DISMISSED WITH LEAVE TO AMEND.

### 4. *Other States' Consumer Protection Statutes*

Finally, Defendant argues that Plaintiff cannot assert violations of the consumer protection laws of all fifty states since these laws raise numerous individual legal issues that would render class certification improper. Mot. at 19. Plaintiff responds that a motion to dismiss is not the proper vehicle to address issues of class certification. Opp'n at 19.

Class allegations typically are tested on a motion for class certification, not at the pleading stage. *See Collins v. Gamestop Corp.*, C10–1210–TEH, 2010 WL 3077671, at *2 (N.D.Cal. Aug. 6, 2010). However, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Thus, some courts have struck class allegations where it is clear from the pleadings that class claims cannot be maintained. *E.g., Sanders v. Apple Inc.*, 672 F.Supp.2d 978, 990–91 (N.D.Cal.2009).

The Ninth Circuit has held that "[e]ach class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir.2012). Thus, "[w]here ... a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *Granfield v. NVIDIA Corp.*, C 11–05403 JW, 2012 WL 2847575, at *4 (N.D.Cal. July 11, 2012) (quotations omitted). Here, there is only one named plaintiff and she has not alleged that she purchased ICBINBS outside of California. Thus, Plaintiff does not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint. This is a pleading defect amenable to determination prior to a motion for class certification.

For these reasons, Plaintiff's claim for violation of the consumer protection acts of the various states is DISMISSED with leave to amend.

## V. *CONCLUSION*

For the foregoing reasons, Defendant Unilever United States, Inc.'s motion to dismiss is GRANTED. The Court finds that Plaintiff Kym Pardini's claims are preempted to the extent that they are based on the allegation that Defendant uses illegal serving sizes and makes false nutrient content claims. The Court grants Plaintiff leave to amend to show that these allegations are not preempted. Plaintiff's claims are not preempted to the extent that they are predicated on Defendant's failure to provide a notation on the nutrition panel that certain ingredients contain fat. Plaintiff's claims for intentional misrepresentation, fraud by concealment, violation of the UCL, violation of the CLRA, breach of express warranty, and violation of other states' consumer protection statutes are DISMISSED WITH LEAVE TO AMEND. Plaintiff's claim for unjust enrichment is DISMISSED WITH PREJUDICE. Plaintiff shall amend her complaint within 30 days of the signature date

of this Order. Failure to do so may result in dismissal with prejudice.

IT IS SO ORDERED.